$317,016.00 Equals the State of Illinois Accountant by Gary Ganinovich vs. Low Frank Tobacco Inc. NL Appalachia, Duff, Idaho, Duff Please proceed. Please declare, Counsel. Good morning, Your Honor. This is a state appeal from a summary judgment entered in a forfeiture action. And the sole issue here on appeal is whether or not a material issue of genuine fact exists based on the documents that were prepared and submitted by the parties. The genesis of this forfeiture action commenced with a number of undercover purchases from the establishment where a confidential informant went in, approached an employee at the front counter slash register, asked to purchase a special vial, which would be like an e-cigarette. And the clerk handed the person a special vial. The confidential informant gave them $50, confirmed the fact that this was a special vial, and said yes. And the confidential informant exited, immediately went to the undercover officer or the officer that was in charge. The vial, at least originally field tested positive for PCP, but eventually when it was tested by the state police, it came out that it contained synthetic cannabinoid ABPINACA. And so criminal actions were filed and separate complaints for forfeiture were filed against a $21,426.25 and some kind of a tobacco machine of some nature makes cigarettes. Or on a bill cutting machine. And so what happened here is a defendant, or a claimant here I should say, filed a motion for summary judgment, claiming there was no material issue of fact in the case. And the trial judge granted that. But we believe what the trial judge did here was make the findings of fact, not determine whether or not genuine issues of fact actually existed. In this particular case, summary judgment would only be proper if there's no genuine issue of material fact left to be decided. In this case, the forfeiture action was predicated upon, in part, upon look-alike substance. The illegal sale of look-alike substance, as well as a separate count under the money laundering act. With respect to the look-alike, we don't have to actually express or actually have a specific denomination of the controlled substances. That's not required to be proved. We don't have to prove the exact substance. What we have to prove here is that the evidence would be sufficient for a trier of fact to reasonably find that there was a common understanding between, in this case, the seller, which would be the claimant here, and the confidential informant. That the substance that was being sold was a controlled substance. That is what we have to take and prove. That is the element of proving that what is being sold is purported to be a look-alike substance or a controlled substance. It does not have to be a controlled substance in order to violate the look-alike. So who said what it was being sold as? There was no specific conversation as to what the specific substance was that was being sold. But what had to be requested was, I want to purchase a special vial. It wasn't just anything off the market. Anything that was being sold openly. This was a vial that was in a box, in back of the counter, under the counter, that you had to specifically ask for in order to obtain. And so... So it was special. Pardon me? It was special. It was special. I think that's your hanging on the head on that. Hanging the hat on the fact that they had to ask for something specific like this. In a sense, yes. That terminology that is used... I mean, the person is not going to ask, hey, do you have any cannabis back there? Do you have any PCP back there? What's going to be asked for is going to be asked, what is specifically being sold? Not a regular e-cigarette vial that's publicly put out there, but something that's under account that you have to ask for. And... I mean, that's your whole case? Well, when you say it's my whole case, what are you referring to? As whether it's a question of fact? Or... I guess I don't understand. I guess I don't understand. Okay. I'm trying to figure out how I can take it. In the case, what had to happen is you couldn't just go in and purchase this without knowing that you're going to ask for it and what you asked for. And so, because of the location, because of the fact that the seal on this e-cigarette was broken, unlike any of the others that are in the store, that e-cigarette, that vial, had to have been tampered with at some point because they all come in otherwise sealed. So, you have to ask for something that's not readily available to anybody. You have to know what to ask for. And when you get that object, you pay more. You pay $50 as opposed to whatever the going cost was, $20 or $30, whatever it was, which is more expensive. And it's in a location where you just can't go in and pick it up and say, it's not like going in and picking up a package of gum. What's the purpose of this look-alike? I mean, a cynic would say, not a cynic, but we want to protect people who are using illicit substances from being defrauded? I mean, that's the admiral that the legislature wants to do that. I think part of what... Because apparently here we don't have an illicit substance. Is that correct? As of the date of the search and seizure, correct. Okay. January 1st of 1619. We have to protect these people, right? In Illinois law. It was not a controlled substance. Federal law it was. Yes, right. And... Either one. I mean, look-alike. I mean, it's always intrigued me. I thought it was an admirable thing. A part of it, I think, is the fact that if you look at the legislative history, part of it is the fact that there are substances that people are allergic to. There are substances that people have reactions to, and there are other things that are in there that people, they don't know what they're buying. I mean, really no different than... Yeah, we're trying to protect them from not getting pure cocaine or getting... Or even... Right. Potentially even something like maybe caffeine or something, or they might be allergic to acetaminophen. I have no idea. The point is the fact that sometimes, because I have had a couple of cases where the look-alike substance has caused adverse effects on the consumer. Correct. So, and it's the fact that... So it is a protection act. It is a protection act. It is that they can protect. And it's been sold as a controlled substance, but it's considered look-alike, which, according to what the legislative debates were, can be just as dangerous. So, Mr. Genetovic, on summary judgment, the non-movement has the obligation to establish the existence of a factual dispute. What is the argument that the claimant was doing anything other than what it purported to be doing, which was selling AB Pinaka in vials instead of the regular e-cigarette? What creates that triable material fact? In this case, it is how it, if you will, got there. What's there? Well, the thing is, the issue of fact here is based on, at least I think anyway, based on the differing affidavits, or the affidavit and the complaint and what the state thinks they can prove. Okay? The vial hadn't been tampered with at some point because the seal was broken. So somebody had to take and put something in there. Now, according to our allegation, it's, we believe we can take and prove it was the claimant. Claimant's affidavit says, I sell nothing but legal stuff, I never tampered with anything, and I get this directly from the, is that, have I missed your question? You're blowing smoke here. The issue is what's in it. You're saying it's a lookalike. What is your evidence, what is it that creates a material fact that it was anything other than what was actually in it? There is nothing that you can point to that actually says that there was something else in it other than what it was. So if you can't point to it, how are you entitled to summary judgment? Hmm? Or how are you entitled for the claimant to get summary judgment? For a trial. Because of the combination of the fact, as Your Honor pointed out, was this an illegal substance at the time, which it wasn't under Illinois law. Under federal law it was, not under Illinois law. So you're saying they only wanted to sell illegal substances? What I'm saying is, what is purported being sold? We don't, I think what Your Honor is suggesting is the fact that we have to take and prove what the substance is in order for there to be a lookalike. We have to take and prove that what was being purportedly sold was cocaine. No, I'm saying that you have to create a material factual dispute. And so you have to present something to show that they were saying that they were selling something other than what they actually sold. And I think we are trying to take and establish that because what was being suggested as being sold, because of the fact of, with Your Honor's question about the special vials and stuff, was a controlled substance. Now we don't have to show what that purported controlled substance was. All we have to take and show is that there was this understanding between the confidential informant and the seller that what was being sold was a controlled substance, which in this case, at least in the Illinois law, was not a controlled substance at the time. We don't have to take and show that they were trying to sell something other than what was in the vial. We have to take and show that what was purported to be sold was a controlled substance. It would be the same thing if I asked for a special vial and I says, I want the special vial that's got PCP in it. And he hands me the special vial and it has nothing in it, but just caffeine or even this AB Pinaka. Sorry. We don't have to take and we don't have to make that showing specifically. That's not what the lookalike substance statute is about. At least the case law that I read with respect to proving the offense doesn't require that. So it's all make-believe? If that's... How many years do you get for that for make-believe? Some of it I think can be pretty real. Real time for make-believe? Yes. So the question here... You're saying special vial, a seal broken, would lead a reasonable person to believe the substance is a controlled substance. Would lead a reasonable person to believe that something was added. Added? Why else would the seal be broken? I don't think you have to talk about adding or anything. Circumstances would lead a reasonable person to believe the substance is a controlled. Well, that would also be true. Well, that's what you apparently under this lookalike statute says. A lookalike substance is a substance other than a controlled substance, which is expressly and impliably represented to be a controlled substance or is distributed under circumstances that lead a reasonable person to believe the substance is a controlled substance. And you're saying... And that's part of the question of fact in this case is what we've got. Well, that would seem to be your answer. And you're saying, well, what is the evidence there? It would be special vial, right? And the conversation between the confidential and formal. And let me see. What did the confidential informant testify to? There was no testimony in this case. Oh, okay. So we're missing that. Well, there wouldn't have been any testimony at this point. It was all by affidavit. The vial was empty? Pardon you? The vial was empty? No. I don't think so. What was in the vial? What was in it? The A, B, and whatever else that was mixed with. So there was no affidavit either? I mean, you could present one, couldn't you? I'm not sure whether the confidential informant was someone who wanted to maintain anonymity. Well, the record just doesn't have that conversation, period. Well, it has the conversation from the officer who basically was in charge of this. He said what? Yeah, basically the confidential informant had informed him that she asked for the special vial. Okay, so you're safe. Yeah. You're safe. But that also was part of the basis for the search warrant. Correct. So what does it do to your argument that this substance that was actually in the e-cigarette, while it's legal in Illinois, is illegal, was illegal under federal law? And when was the law in Illinois passed? Not when did it go into effect, but when was it passed to say that it was going to be illegal in Illinois? I'm trying to recall the passage of data. All I copied down was the effective date of the legislation. But I believe it went into effect January the 1st of 16, I believe. I believe that it passed sometime in late 2015, I think. I honestly don't remember specifically the exact month. Okay, so this was filed on December 23rd of 2015. So it would seem that maybe they knew that it was going to be illegal in Illinois on January the 1st? I can't speak for the assistance that filed this, but I guess my question would be, well, it would seem to be irrelevant if they considered it to be effective because it's not so much when the legislation went into effect as when the act was committed that would be controlling. So the fact that even if they knew it was coming in on January the 1st, it wouldn't have had any impact on the forfeiture or anything else. Thank you. Okay, thank you. Counsel? Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Doug Eibendoll, and I'm here on behalf of the appellee, Low Franks Tobacco, Inc., which is a claimant of the property at issue in this appeal, specifically $21,426.25 in U.S. currency and a Royal Sovereign brand bill counter. Before addressing the mootness issue, and I do believe this case is moot, I'll briefly address summary judgment. Under Illinois Forfeiture Law, the government must establish a nexus between the alleged illegal activity and the seized property. The State failed to do that. The Circuit Court correctly found that there was no trial or question of fact on that overriding issue. The claimant business accounted for every single penny of the money at issue in this case. All came from lawful and routine business sources. The State never even attempted to refute that accounting in the Circuit Court. Claimant's motion for summary judgment included a sworn affidavit from the owner of the claimant's store, Mr. Efren Aguilera, in which he detailed the lawful business sources and uses of the entire amount of currency which was confiscated. Those lawful business sources and uses were also contained in claimant's answer to the State's original complaint for forfeiture. Claimant's testimony and verified answers were not refuted by any counter affidavit from the State. And let's keep in mind, the State had plenty of opportunities. The government seized claimant's business records, both those on computer and those on paper, and most of those records the government still hasn't returned. If that was evidence of tainted cash, the State had plenty of time to find it. The State also had multiple opportunities to get a counter affidavit right, but it didn't. The affidavit the State originally filed with its response to the motion for summary judgment was struck by the Circuit Court due to multiple legal deficiencies. Then a few days before the February 8, 2017, hearing on claimant's motion for summary judgment, the State filed a couple of new affidavits, but the Circuit Court found the State still failed to raise a material question of fact. Why wasn't the other records returned? It's a very frustrating process, Ron. There have actually been multiple orders between all the cases to return the property, but the State will typically say because they need it for the criminal prosecution, but there's actually no specific order on that that they received that I can tell. They did give Ms. Regular back a baker's box with copies, but as I'll get to, actually in Ms. Regular's criminal case, which I'll get to, all of the evidence that was seized in the raid in October of 2015 was all suppressed. It was all suppressed, and that case was dismissed. So to answer your question, it's a very good question, but it's been a very big hardship to the small businesses. So there's no ongoing criminal prosecution? With respect to Mr. Aguilera, he was charged, I can tell you about that now, footnote 5 on page 28 of our response brief. I noted that criminal charges related to alleged unlawful cigarette manufacturing were pending against the claimant owner, Mr. Aguilera, of the Will County Circuit Court. I represented Mr. Aguilera there in that criminal case, and I think this Court can take judicial notice of the fact that all charges in that criminal case against Mr. Aguilera were dismissed on November 28th of last year. That's case number 216C-117. It was, to be precise, it was ordered no late prosecute, and I apologize for my horrible Latin. It was ordered that on the quarter of that date, and that order, that was issued in response to the Attorney General's motion to drop the case in total after a defendant's, Mr. Aguilera's, motion to suppress all the evidence seized during the October 27th, 2015 search was granted on October 11th of last year. So with regard to Mr. Aguilera, no, there are no, Mr. Aguilera is the owner of the claimant. He's the owner of Lobox Tobacco. So with respect to Mr. Aguilera, there are no criminal charges pending against him. And further stated, Mr. Aguilera was never charged with respect to the lookalike case. Only two of his... So is the answer no? No charges with respect to the owner. The only outstanding charge is two of his clerks were charged with the lookalike. And there, with the forfeiture, you get into the whole innocent owner and that, and that's why I'm talking about the nexus, and that's why we prevailed at the circuit court, because I would urge that the... So the cigarette issue was because of the background? I don't want to bore you with all the details. I mean, I'll give you as much detail as you want, but it was a sub lessee. It was a sub lessee, and they came in there. But the attorney general brought the case, and I think that says something. Well, is there anybody charged who was in the building? Yes, two clerks, two clerks. You're talking about outstanding charges. My client was charged with the manufacturing thing. That case is now gone with the cigarette-related. Two clerks or clerks? With a lookalike substance. And I represent those two clerks as well in the criminal cases. We're still in pretrial. Actually, full disclosure, last week, in fact, the judge denied my motion to dismiss in those two. I do plan to file a motion to reconsider within a week or two, because I do respectfully think that the... But right now we're here in an interim action, correct? Correct. Okay. And you've established that the property is lawfully the property of the owner? The owner of the business. Right. And so we're right here as to whether or not that should be forthwith. Our main argument, and I would argue the main reason, if you look at the transcript, which is part of the record from below the February 8th hearing from last year, that the most important factor here in the claimant's favor is the fact that the state never established that nexus that the owner forfeiture act requires. They never established that nexus between the seized property and the alleged criminal activity. Which is selling of a lookalike substance. Correct. Right. Correct. And as you said earlier, all the money was documented to the owner. Correct. Right. Actually, I can add a little bit more on that. It was sort of bad timing here on the day of the search and seizure. In the record, it explains this in more detail. Ms. Regulator did an affidavit. It was not Ms. Regulator's normal business practice to have that amount of cash on hand at his store at any one time. It was unusual to have $21,000 in change on hand. Most of the cash confiscated was already prepared with deposit slips, was ready to be deposited at the claimant's bank. Other amounts were attached to invoices that were going to be used to pay vendors for product inventory for store shelves. It was just unfortunate timing. Ms. Regulator had delayed his normal trip to the bank in the days preceding the police search of his store on Tuesday, October 27, 2015. The bank deposit and inventory purchases were delayed because Ms. Regulator had been admitted to the hospital with some diabetes-related health issues. He was hospitalized for over that weekend, wasn't discharged until afternoon on Monday, the day before the search and seizure. Ms. Regulator testified by affidavit that Mondays were typically the day he goes to the bank and also the day he pays vendors, but his hospital stay had to run behind that particular week. The record also explains Ms. Regulator, at the time, owned and operated actually three retail tobacco stores, including one in Indiana. So some portion of the currency confiscated wasn't even attributable to the Bolingbroke store where the search warrant was executed. But the Bolingbroke store is closest to Ms. Regulator's residence, so it does serve as a central location for coordinating his retail business. And all sales receipts, including from his other stores, would typically be temporarily held there, pending deposit. The same would be true for money used to buy inventory stock for the other stores. So in conclusion, on this point again, the claimant urges that the Circuit Court got it absolutely right. There was no question of disputed fact. And, you know, Your Honors, I recognize that the amount of currency we're talking about in this case isn't a huge sum, or at least not compared to the amounts of money at issue in the cases that you routinely hear all the time, I'm certain. But for the claimant here, small business, it actually is a significant sum. So let's move to actually what I think is the biggest point, which I saved for last. This appeal has moved. Not surprisingly, I respectfully but strongly disagree with opposing counsel on this point. This appeal has moved because there is, in fact, no meaningful remedy which could be pursued by the government in Circuit Court if this case were remanded. No case or controversy remains alive. The State seems to suggest that if it won a remand and then eventually prevailed in all respects after such a remand, then it could pursue the claimant business in a civil collection case. That's how I read their brief. But the State provides no valid authority for its suggestion. In fact, the forfeiture law is just that. It's a statute exclusively about an alleged wrongdoer forfeiting specific property deemed to have a nexus to specified illegal conduct. Putting aside the fact there is no nexus here, even more importantly, it is impossible for the claimant, Mr. Aguilera, to return the currency and it is not in the claimant's possession. The specified currency seized is long gone. Claimant's owner, Mr. Aguilera, retook possession of the entire sum on March 15 of last year from the Bolingbrook Police Department. I was there also. So that was nearly 14 months ago. Claimant immediately deposited that currency in the business's bank account and it was used shortly thereafter to pay business debts. And as the record reflects, I personally in turn received a portion of that deposit in the form of attorney's fees by check. So the claimant does not have the subject currency to return. What the state seems to suggest in its reply brief is a scenario where repayment of the money would not be a forfeiture. In truth, it would be a fine. And the civil forfeiture statute we're governed by in this case simply does not contain a provision where the state could lawfully institute a monetary fine as suggested by the state. And the state went further than that. They charged the claimant originally with a crime. That's been dismissed. And so, you know, now we're still on this forfeiture. But the point is the forfeiture is moved. They can't now essentially turn it, in essence, into a monetary fine. It's just not – that's not – Thank you. So is your argument it's moved because there's nothing to forfeit? Correct. But it's been returned. What about the bill counter? Where is it? You know what? I asked my client way over here. In fact, he still has it. He does. It was returned to him. Still has it. It's three years old. Originally cost about $200. It might be worth $100 now. But, again, we detailed the legitimate business purpose of that. I mean, he's a retail tobacco business. He gets a lot of customers paying cash. So he has a bill counter to count it. So there are other people who are in other activities. Well, Gary, we can talk – I mean, we're always talking about a real drug dealer, a national drug dealer. They could use just about a notepad. Anything could potentially be. But the state had a ton of opportunities to file a stay for the return of property, in both the circuit court and in this court, but it did not do so. The state did finally seek a stay in this court by emergency motion on March 15th of last year, but by then it was too late, as I believe this court clearly observed in its order on March 20th of last year. I would also simply mention that this court has already ruled on a return of property question. This court's March 20, 2017, order dispensed with that issue as well. Would this court correctly know that the property had already been returned to claimant? So I think that concludes my little argument. And otherwise, the claimant stands on the response brief and, in fact, this court's previous rulings in this case. And I thank you very much for your time, and I welcome any questions you might have. Thank you, Your Honor. Next, I recollect forfeiture law in the drug cases. If you find marked proceeds mixed in with other money that's unmarked, it's all forfeiture. There's your nexus. The money that was used to buy the special vials was found not only in the cash register, but also found in the money that was counted waiting for the deposit in the back room, to which only the claimant had access to, and the money was found there. So that's the reason why the $21,000 was taken as a whole, and there is your nexus. What is this? I found it very intriguing, intriguing in two ways. It's a real nice affirmative defense to take in any case, and it's a real nice way to prevent the people from being able to take and get an appeal and a decision on what might very well be an issue in their favor. Because what counsel is saying here, just assume for the sake of argument, that the issue that the state has raised is found to be correct. If the appeal is moot, this court really cannot issue a decision because it would be purely advisory. This court is not authorized or is not right to take and give those kinds of decisions. So what this does is, by giving the property back, and it was requested, I believe, in the trial court for the state to take and have a stay, the trial judge refused, and so yes, we tried here, the effort was denied, and so the property is returned. So we can end the appeal. We can end any legitimacy to the state's issue simply by disposing of the property. I don't think that is what mootness is all about, and I don't think that is what the forfeiture procedure is all about, how it should operate. Because the state, in this civil action, has every right that any other civil legal has to have their issues decided, and to have it meaningful decided, and I don't mean what I mean by that simply is the fact that the European has to have meaning to it, not just advisory. And so under these circumstances, I don't think that this case, by any stretch, is moot. I think that there remains something that can be done, and the fact that, in this case anyway, the fact that claimant has already spent the money, I think opens him up to, and it's not a fine, it would simply be a judgment in the state's favor for the $21,000, because we've proved our right to forfeit $21,426.25. That's what you're treating it as, not as a forfeiture, but as a judgment. In the forfeiture action that would have to happen in this case, because of what claimant has done by disposing of the property, we would have to take and get that reduced to a judgment in order to be able to collect. You're treating it right from the get-go as a judgment, not as a forfeiture. I guess I've lost what your question is. You're treating it as a money judgment, not as a forfeiture. Yes, not as a forfeiture. Treating it as a money judgment at that point. We proved our entitlement to the original $21,426.25, and we should be entitled to obtain that money. And the fact that claimant has disposed of it shouldn't prevent the state from seeking any other type of effective remedy. Counsel's one minute. Other than that, are there any questions? Thank you, Your Honors. Thank you, Counsel. The court will take this matter under advisement, and now we'll take a break for panel discussion.